1999 UT App 042

Ronald R. DRAUGHON, Plaintiff
and Appellant,

v.

DEPARTMENT OF FINANCIAL INSTI-
TUTIONS, STATE OF UTAH; Depart-
ment of Human Resource Management,
State of Utah; Career Service Review
Board, State of Utah; G. Edward Leary,
in his individual and official capacities;
Karen Suzuki–Okabe, in her individual
and official capacities; and Robert N.
White, in his individual and official ca-
pacities, Defendants and Appellees.

No. 970554–CA

Court of Appeals of Utah.

Feb. 19, 1999.

Elizabeth T. Dunning and Brett J. DelPorto, Watkiss, Dunning & Skordas, Salt Lake City, for Appellant.

Jan Graham, Attorney General, Debra J. Moore and Brent A. Burnett, Assistant Attorneys General, Salt Lake City, for Appellees.

Phillip W. Dyer and Kevin C. Timken, Law Offices of Phillip W. Dyer, Salt Lake City, for Amicus Curiae Utah Public Employees' Association.

Before Judges BILLINGS, DAVIS, and ORME.

## OPINION

BILLINGS, Judge:

¶ 1 Appellant Ronald Draughon (Appellant) appeals from a grant of summary judgment to the Department of Financial Institutions (the Department) and the Department of Human Resource Management (Human Resources) upholding rules promulgated by Human Resources allowing his involuntary reassignment without the procedural protections required for a demotion. We reverse and remand.

## FACTS

¶ 2 Appellant is a career civil service employee of the Department. From 1988 to 1996 he held the position of Financial Institutions Manager with the working title of Supervisor of Savings and Loans. This position placed appellant in a pay range with steps from 53 to 68, and as of 1996 he was being paid at step 61. In January 1996, appellant was "involuntarily reassigned" to the position of Financial Institutions Specialist with a working title of Senior Examiner and a pay range with steps from 51 to 65. Appellant's current pay was unchanged. The Department's decision was made pursuant to Utah Admin. Code R477–7–4(9) (1996), which defines Involuntary Reassignment:

> Positions may be filled by involuntarily reassigning staff without a reduction in pay within the agency ... with approval of the respective agency heads for administrative reasons such as budget constraints, corrective action pursuant to R477–10–2, or the need to move persons to positions that better utilize their skills.

Appellant was told the involuntary reassignment was made "to better utilize his skills."

¶ 3 Appellant grieved his involuntary reassignment, but was denied a hearing before the Career Services Review Board. He also filed a Petition for Rules Change with Human Resources, contending that Human Resources's rules, distinguishing between a demotion and an involuntary reassignment, made an illusory distinction and denied him his grievance rights. Appellant argued that his involuntary reassignment was in fact a demotion, though he suffered no immediate loss of pay. Human Resources did not act on appellant's petition. Appellant later filed a complaint in district court alleging, among other things, that the Human Resources rules were invalid as they were contrary to the Personnel Management Act. *See* Utah Code Ann. § 67–19–18(1) (1996). The trial court dismissed appellant's complaint. Appellant now brings this appeal.

## ANALYSIS [1]

■ ¶ 4 "Summary judgment is appropriate only when there are no genuine issues

---

1. The Department has filed a Motion to Strike an amicus brief offered by the Utah Public Employees' Association (UPEA), arguing that UPEA has only raised issues not raised below. We disagree. Though UPEA raises some novel issues, at least one part of its brief touches on the primary focus of this appeal. Thus, "[c]onsistent with the well-settled rule that an amicus brief cannot extend or enlarge the issues on appeal, we ... only consider[ ] those portions of the amicus brief that bear on the issues pursued by the parties to this appeal." *Madsen v. Borthick*, 658 P.2d 627, 629 n. 3 (Utah 1983) (internal

of material fact and the moving party is entitled to judgment as a matter of law. 'Because a challenge to summary judgment presents for review only questions of law, we accord no deference to the trial court's conclusions but review them for correctness.'" *Crossroads Plaza Ass'n v. Pratt,* 912 P.2d 961, 964 (Utah 1996) (citations omitted). Additionally, "[q]uestions of statutory construction are matters of law, and we give no deference to an administrative agency's interpretation of a statute absent certain circumstances, none of which exist here." *Sanders Brine Shrimp v. Audit Div.,* 846 P.2d 1304, 1305 (Utah 1993) (citation omitted).

¶ 5 Human Resources argues that we should uphold its rules distinguishing between a demotion and an involuntary reassignment if the definitions are reasonable. *See R.O.A. Gen., Inc. v. Department of Transp.,* 966 P.2d 840, 843 (Utah 1998). While we agree with this principle in the abstract, the dispositive issue here is whether the rules promulgated by Human Resources that distinguish between a demotion and an involuntary reassignment, without an immediate loss of pay, are in harmony with section 67–19–18(1) (1996).[2] " 'It is a long-standing principle of administrative law that an agency's rules must be consistent with its governing statute.'" *Crossroads Plaza,* 912 P.2d at 965 (quoting *Sanders Brine Shrimp,* 846 P.2d at 1306). We adhere to this principle because " '[a]n administrative rule out of harmony or in conflict with the express provisions of a statute "would in effect amend that statute." '" *Id.* (quoting *Consolidation Coal Co. v. Division of State Lands & Forestry,* 886 P.2d 514, 532 (Utah 1994) (Bench, J., concurring and dissenting)) (additional citations omitted).

> An administrative agency's authority to promulgate regulations is limited to those regulations which are consonant with the statutory framework, and neither contrary

to the statute nor beyond its scope. Administrative regulations "may not conflict with the design of an Act, and when they do the court has a duty to invalidate them.... Furthermore, when an administrative official misconstrues a statute and issues a regulation beyond the scope of a statute, it is in excess of administrative authority granted." ... Agency regulations may not "abridge, enlarge, extend or modify [a] statute...."

*Crowther v. Nationwide Mut. Ins. Co.,* 762 P.2d 1119, 1122 (Utah Ct.App.1988) (citations omitted).

¶ 6 We review the governing statute and the rules at issue in this appeal against this governing legal principle. Section 67–19–18(1) states:

> Career service employees may be dismissed or demoted:
>
> (a) to advance the good of the public service; or
>
> (b) for just causes such as inefficiency, incompetency, failure to maintain skills or adequate performance levels, insubordination, disloyalty to the orders of a superior, misfeasance, malfeasance, or nonfeasance in office.

Utah Code Ann. § 67–19–18(1) (1996). Career service employees who are either dismissed or demoted have procedural protections under Utah Code Ann. § 67–19a–302 (1996). These protections include appealing grievances to the administrator, who may appoint a hearing officer to adjudicate the complaint. If still dissatisfied, and if the appeal meets specific statutory criteria, the employee may appeal to the Career Services Review Board. *See id.* §§ 67–19a–402 to –408. However, "[a] career service employee may grieve all other matters only to the level of his department head[, and t]he decision of the department head is final and unappealable to the [Career Services Board.]" *Id.* § 67–19a–302. The statutory scheme does

citations omitted). We therefore deny the motion in part and grant the motion in part.

2. Because we conclude this issue is dispositive, we do not reach appellant's constitutional arguments. *See R.O.A. Gen., Inc. v. Department of Transp.,* 966 P.2d 840, 842 (Utah 1998) ("We do

not reach [appellant's] constitutional arguments because we can resolve this case on statutory grounds.") (citing *Hoyle v. Monson,* 606 P.2d 240, 242 (Utah 1980)) (holding constitutional questions are not to be addressed where courts can determine the merits on other grounds).

not address the procedural protections for an "involuntary reassignment."

¶ 7 Pursuant to his authority under section 67–19–6(1)(d),[3] the Human Resources director adopted rules to further the agency's statutory guidelines. These rules, unlike the statute, distinguish between a demotion and an involuntary reassignment.

(27) Demotion: A disciplinary action resulting in a salary reduction on the current salary range or the movement of an incumbent from one position to another position having a lower salary range, including a reduction in salary. If this action is taken for a limited time period, it shall only be within the current salary range.

. . . .

(57) Involuntary Reassignment: Management initiated movement of an employee from his current position to a position of an equal or lower salary range, or to a different work location or organization unit for administrative, corrective action or other reasons not included in the definition of demotion or reclassification.

Utah Admin. R477–1–1(27), (57) (1996). This distinction is further clarified in Rules 477–7–4(9) and (11):

(9) Involuntary Reassignment

Positions may be filled by involuntarily reassigning staff without a reduction in pay within the agency or across agencies with approval of the respective agency heads for administrative reasons such as budget constraints, corrective action pursuant to R477–10–2, *or the need to move persons to positions that better utilize their skills.*

. . . .

(11) Demotions

Employees demoted consistent with R477–11–2 *shall receive a salary reduction of one or more salary steps* as determined by the agency head or designee. The agency head or designee may move an employee to a position with a lower salary range concurrent with the salary reduction.

Utah Amin.Code R477–7–4 (9), (11) (emphasis added). Furthermore, the rules adopted by Human Resources place an "involuntary reassignment" in the category where an employee may appeal his change in status only to his department head. *See* Utah Code Ann. § 67–19a–302(2) (1996).

■ ¶ 8 The simple question raised is whether the distinction made in the regulations between "involuntary reassignment" and "demotion" is consistent with the statutory scheme. The Legislature has plainly set forth the two situations in which a career service employee can be demoted or dismissed. Additionally, under section 67–19a–302, those employees that are "demoted" have the right to grieve such a decision "to all levels of grievance procedure."

¶ 9 However, under the rules promulgated by Human Resources, if an employee is "involuntarily reassigned" he does not have the same grievance opportunities as a "demoted" employee. Yet, the agency's definition of an "involuntary reassignment" seems entirely consistent with what is commonly understood as a "demotion." *Webster's Ninth New Collegiate Dictionary* 338 (1986) defines "demote" as "1: to reduce to a lower grade or rank 2: to relegate to a less important position."

¶ 10 Here, appellant's involuntary reassignment was in fact a demotion. Though he suffered no immediate loss of pay, appellant's new position as a Financial Institutions Specialist has less status, fewer responsibilities, a lower pay range, and will ultimately result in commensurately lower retirement benefits.

¶ 11 Thus, we hold that Human Resources's rules distinguishing between a "demotion" and an "involuntary reassignment," solely on the basis of an immediate loss of pay, are invalid because this illusory distinction contravenes the Legislature's intent to afford a career service employee the opportunity to fully grieve a demotion.[4] Thus, we

---

3. Utah Code Ann. § 67–19–6(1)(d) (1996) states that "[t]he director shall adopt rules for personnel management according to the procedures of Title 63, Chapter 46a, Utah Administrative Rulemaking Act."

4. We agree with appellant's counsel that Human Resources's rules distinguishing between a demotion and an involuntary reassignment are comparable to a memorable exchange between Alice and Humpty Dumpty: " 'When I use a

reverse the trial court's grant of summary judgment and remand for proceedings that allow appellant all grievance procedures owed to a demoted employee, consistent with the Personnel Management Act.

¶ 12   I CONCUR: JAMES Z. DAVIS, Judge.

¶ 13   I CONCUR IN THE RESULT: GREGORY K. ORME, Judge.

word,' Humpty Dumpty said in a rather scornful tone, 'it means just what I choose it to mean—nothing more nor less.' 'The question is,' said Alice, 'whether you can make words mean different things.' 'The question is,' said Humpty Dumpty, 'which is to be master—that's all.'" Lewis Carroll, *Through the Looking Glass and What Alice Found There* 123 (1941).